**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
MOBILE DIVISION**

**Charles D Huggins,
Plaintiff,**

**Case No.:**

**v.**

**Jury Trial Demanded**

**Brown & Root Industrial Services
LLC, Evonik Corporation, and
Charles Graham,
Defendants.**

**COMPLAINT**

## I.   JURISDICTION

1.     This suit is authorized and instituted under Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, the "Civil Rights Act of 1991;" 42 U.S.C. § 2000e, et seq. (Title VII).

2.     This suit is authorized and instituted under 42 U.S.C. § 1981. This is a suit authorized and instituted under "Section 1981."

3.     This Complaint seeks legal and equitable relief for the defendant's state law claims brought pursuant 28 U.S. Code § 1367.

4.     The plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days of the last discriminatory act (Exhibit A). The plaintiff further sued within ninety (90) days after receipt of the right-to-sue letter issued by the EEOC (Exhibit B).

## II.  PARTIES

5.     The plaintiff, Charles D Huggins ("The plaintiff" or "Huggins") is a resident of Daphne, Baldwin, Alabama, and performed work for the defendant in the counties composing the Southern District of Alabama during the events of this case.  Thus, under 28 U.S.C. § 1391(b), venue for this action lies in the Mobile Division.

6.     The defendant Brown & Root Industrial Services LLC ("The defendant") is a company registered and doing business in the State of Alabama and has sufficient minimum contacts with the State of Alabama. It is subject to service of process in Alabama.

7.     Brown and Root employed at least fifteen (15) people during the current or preceding calendar year.

8.  Brown and Root has more than 500 employees.

9.  The defendant's gross annual revenue exceeds $500,000.

10. Evonik employed at least fifteen (15) people during the current or preceding calendar year.

11. Evonik has more than 500 employees.

12. The defendant's gross annual revenue exceeds $500,000.

13. In 2023, Evonik's sales were 15.3 billion Euros.

## III.     FACTS

14.     Charles Huggins is a person of African ancestry, the "race" colloquially referred to as "Black."

15.     Huggins began working for Brown & Root as a CDL Truck Driver in January 2014.

16.     After a few months in that position, Huggins was promoted to Logistics Foreman at the West Warehouse at the Evonik site supervising 50 employees.

17.     All of Huggins's performance appraisals in that position met or exceeded expectations.

18.     After about four and a half years, the site manager Kel Boiszair and Shawn Marsh, the technical director on the Evonik team met with Huggins and asked him to consider taking a promotion to become the Logistics Manager at the Stores location.

19.     Huggins accepted the position.

20.     Brown and Root has a progressive discipline policy that provides verbal warnings, written reprimands, and suspensions before termination.

21.     Huggins received no progressive discipline during the time that he worked for Brown and Root.

22.    Brown and Root has a performance management system that requires regularly scheduled performance appraisals.

23.    All the performance appraisals given to Huggins exceeded expectations.

24.    At some point in 2022, Andy Knight, an Evonik employee, became the Stores location manager.

25.    When Knight arrived, he had come from a different industry.

26.    As a result, Huggins was required to orient Knight on the operations.

27.    Huggins spent about 90 days orienting Knight to the operation as he learned about the company.

28.    During the summer of 2023, Knight began to micromanage Huggins.

29.    At the same time, Knight began to schedule Jerry Raimey, a person of European ancestry, the race colloquially referred to as "white," who was a material handler to work in the area during times when Huggins was not there.

30.    Raimey began to receive overtime in the area, but Huggins' Material Handler employees who were also people of African ancestry, were denied overtime.

31.    Huggins would only find out about Raimey working in his area after the time was worked.

32.     On or about March 2023, Evonik posted Position # R24684 EHSSQ Specialist, Quality Assurance Officer.

33.     Huggins applied for the position and met the qualifications.

34.     Huggins interviewed for the position.

35.     Rather than award the position to Huggins, the company decided not to fill the position.

36.     In October 2023, a general foreman position became available for Brown and Root's operations with Evonik.

37.     Huggins applied for the position and met the qualifications.

38.     The site manager, Gerald Hicks, told Huggins that he met the qualifications and would receive an interview.

39.     Huggins did not receive an interview.

40.     Instead in November 2023, the company asked Huggins to sit in on an interview of a lesser-qualified person of European ancestry.

41.     The position was awarded to a different person of European ancestry with no supervisory experience.

42.     On or about December 28, 2023, Knight and Huggins were having a discussion concerning the warehouse.

43.     During the conversation, Knight was making disparaging comments about the employees, who were all Black.

44. Knight said the employees could not count, could not read, and could not write.

45. Then, when Knight said that the employees were lazy, Huggins sent an email to Traci Collins with Brown and Root Human Resources saying that he believed that the statements were racial.

46. Huggins also spoke with Collins about the interaction, who said that she would address it.

47. The next day, Huggins and Knight spoke again.

48. During the conversation, Knight again referred to the Black employees as lazy.

49. This time, Huggins told Knight that it was racially inappropriate and that he had gone to Collins to report him.

50. After Huggins told Knight that he had reported him, Knight suggested that they go to Human Resources.

51. When they arrived, Knight went to speak with Collins alone.

52. When they returned, Collins sent Huggins home.

53. Brown and Root never brought Huggins back to his position.

54. Instead, the company told him that he could take a material handler position or be fired.

55.    Huggins did not accept the demotion as it would have been a substantial decrease in pay.

56.    Huggins was terminated on January 2, 2024.

57.    Raimey, who had no supervisory experience, replaced Huggins on January 5, 2024.

58.    Thereafter, Huggins filed a Charge of Discrimination with the EEOC and Evonik provided a response to the EEOC Charge.

59.    After being terminated, Huggins applied for and received a position as Senior Warehouse Manager for Wood Engineering at the Evonik location.

60.    However, after receiving the offer, he was later told that the offer was rescinded because Charles Graham with Evonik told the company that Huggins was banned.

61.    Huggins had done nothing to be banned from the facility.

62.    After Huggins was told that he was banned, he called Evonik security.

63.    The company had not banned him in the security system.

64.    Later, when the company was asked to substantiate the reason for the ban, the company said that their policy was to ban all terminated employees.

65.    There is no such policy.

66.    As a result of Evonik's false and disparaging comments, Huggins lost the job opportunity.

## IV.    COUNT I TITLE VII – RACE DISCRIMINATION – FAILURE TO HIRE

### Against Evonik

67.    Huggins incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

68.    The plaintiff is a person of African ancestry.

69.    The Plaintiff was qualified for the Quality Assurance/EHSSQ Specialist position.

70.    The plaintiff applied for the Logistics position on or about March of 2023.

71.    The defendant did not hire the plaintiff.

72.    The plaintiff's Race was a motivating factor in the defendant's decision not to hire/promote the plaintiff.

73.    Because of the defendant's discriminatory decision made in whole or in part because of his race, the plaintiff has lost pay and continues to be paid less.

74.    The defendant's actions in not promoting/hiring the plaintiff violated Title VII.

## V.    COUNT II 42 U. S. C. § 1981 FAILURE TO HIRE/PROMOTE

### Against Evonik

75.    The plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

76.    The plaintiff is a person of African ancestry.

77.    On or about March of 2023, Evonik posted a Quality Assurance Officer/EHSSQ Specialist position.

78.    Plaintiff was qualified for the Quality Assurance Officer position.

79.    Huggins applied for the Logistics position.

80.    Evonik did not hire the plaintiff.

81.    Evonik's decision to not hire plaintiff was made, in whole or part, because of his race.

82.    Because of the defendant's discriminatory decision made in whole or in part because of race, the plaintiff has been damaged and continues to be damaged, suffering loss of pay, benefits other monetary and non-monetary losses and mental anguish.

83.    Because of the defendant's violation of 42 U. S. C § 1981, the plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

84.    Because of the defendant's violation of 42 U. S. C. § 1981, the plaintiff has been damaged, suffering loss of pay, benefits other monetary and non-monetary losses, and mental anguish.

## VI.    COUNT III TITLE VII – RACE DISCRIMINATION – FAILURE TO HIRE

### Against Brown and Root

85.    Huggins incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

86.    The plaintiff is a person of African ancestry.

87.    The plaintiff was qualified for the General Foreman position.

88.    The plaintiff applied for the General Foreman position on or about November of 2023.

89.    The defendant did not promote the plaintiff.

90.    The defendant's Race was a motivating factor in the defendant's decision not to promote the plaintiff.

91.    Because of the defendant's discriminatory decision made in whole or in part because of his race, the plaintiff has lost pay and continues to be paid less.

92.    The defendant's actions in not promoting/hiring the plaintiff violated Title VII.

## VII.    COUNT IV 42 U. S. C. § 1981 FAILURE TO PROMOTE against Brown and Root

93.    The plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

94.    The plaintiff is a person of African ancestry.

95.    On or about November of 2023, Brown and Root posted a General Foreman position.

96.    Plaintiff was qualified for the General Foreman position.

97.    Huggins applied for the Logistics position.

98.    Brown and Root did not promote the plaintiff.

99.    Instead, the company promoted a lesser qualified person who was a person of European ancestry.

100.    Brown and Root's decision to not promote plaintiff was made, in whole or part, because of his race.

101.    Because of the defendant's discriminatory decision made in whole or in part because of race, the plaintiff has been damaged and continues to be damaged, suffering loss of pay, benefits other monetary and non-monetary losses and mental anguish.

102.    Because of the defendant's violation of 42 U. S. C § 1981, the plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## VIII.     COUNT V TITLE VII - RACE DISCHARGE

### Against all Defendants

103.   The plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

104.   The plaintiff is a person of African ancestry.

105.   The plaintiff was qualified for the Logistics Foreman position.

106.   The defendant's employee, terminated the plaintiff's employment on or about January 2, 2024.

107.   The defendant replaced the plaintiff with a person who is not of African ancestry.

108.   The defendant's actions in terminating the plaintiff's employment violated Title VII.

109.   Because of the defendant's violation of Title VII, the plaintiff has been damaged, suffering loss of pay and benefits.

110.   Race was a motivating factor in the defendant's decision to terminate the plaintiff's employment.

111.   Because of the defendant's discriminatory decision made in whole or in part because of race, the plaintiff has been damaged and continues to be damaged, suffering loss of pay, benefits other monetary and non-monetary losses and mental anguish.

## IX.        COUNT VI 42 U. S. C. § 1981 DISCHARGE

112.   The plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

113.   The plaintiff is a person of African ancestry.

114.   The plaintiff was qualified for the Logistics Foreman position.

115.   On or about  January 2, 2024, the defendant terminated the plaintiff's employment.

116.   On or about January 5, 2024, Defendants replaced Plaintiff with a person of European ancestry with lesser qualifications.

117.   The defendant's decision to terminate the plaintiff's employment was made, in whole or part, because of race in violation of 42 U. S. C. § 1981.

118.   Because of the defendant's violation of 42 U. S. C. § 1981, the plaintiff has been damaged and continues to be damaged, suffering loss of pay, benefits, other monetary and non-monetary losses, and mental anguish.

## X.    COUNT VII - TITLE VII RETALIATION

119.   The plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

120.   The plaintiff is a person of African ancestry.

121.   The plaintiff was qualified for his position and able to perform the essential functions of the job.

122.   On or about December 28, 2023, the plaintiff engaged in protected activity, he reported discrimination based on race.

123.   On or about January 3, 2024, Defendants terminated the plaintiff's employment.

124.   But for the plaintiff's protected activity, the defendant would have retained the plaintiff.

125.   The defendant violated Title VII by terminating the plaintiff for engaging in protected activity.

126.   Because of the defendant's violation of Title VII, the plaintiff has been damaged suffering loss of pay, benefits, and mental anguish.

## XI.   COUNT VIII 42 U. S. C. § 1981 RETALIATION

127.   The plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

128.   The plaintiff is a person of African ancestry.

129.   The plaintiff was qualified for his position and able to perform the essential functions of the job.

130.   On or about December 28, 2023, the plaintiff engaged in protected activity, when he reported discrimination based on race.

131.   On or about January 3, 2024, Defendants terminated the plaintiff's employment.

132.   The plaintiff's protected activity was a but for cause of the defendant's decision not to retain the plaintiff.

133.   The defendant violated 42 U. S. C. § 1981 by terminating the plaintiff in whole or in part for engaging in protected activity.

134.   Because of the defendant's violation of 42 U. S. C. § 1981, the plaintiff has been damaged suffering loss of pay, benefits, and mental anguish.

## XII.    COUNT IX TITLE VII – RETALIATION Against Evonik

135.   The plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

136.   The plaintiff was qualified for his position with Wood Engineering and able to perform the essential functions of the job.

137.   On or about December 28, 2023, the plaintiff engaged in protected activity, when he reported discrimination based on race and continued to pursue his EEOC Charge.

138.   On or about January 3, 2024 , the defendant terminated the plaintiff's employment.

139.   Thereafter, Plaintiff applied for and was extended an offer of employment from Wood Engineering.

140.   After the company extended the offer, Evonik employees falsely told Wood Engineering that Plaintiff was banned from the property causing him to lose his job offer.

141.   But for the plaintiff's protected activity, the defendant would have retained the plaintiff in his position as a Logistics Foreman position.

142.   The defendant violated Title VII by falsely claiming Plaintiff was banned after he engaged in protected activity.

143.   Because of the defendant's violation of Title VII, the plaintiff has been damaged and continues to be damaged, suffering loss of pay, benefits, other monetary and non-monetary losses, and mental anguish.

## XIII.    COUNT X 42 USC § 1981 Against Evonik

144.   The plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

145.   The plaintiff was qualified for his position with Wood Engineering and able to perform the essential functions of the job.

146.   On or about December 28, 2023, the plaintiff engaged in protected activity, when he reported discrimination based on race and continued to pursue his EEOC Charge.

147.   On or about January 3, 2024 , the defendant terminated the plaintiff's employment.

148.   Thereafter, Plaintiff applied for and extended an offer of employment from Wood Engineering.

149.   After the company extended the offer, Evonik employees falsely told Wood Engineering that Plaintiff was banned from the property causing him to lose his job offer.

150.   But for the plaintiff's protected activity, the defendant would have retained the plaintiff in his position as a Logistics Foreman position.

151.   The defendant violated Title VII by falsely claiming Plaintiff was banned after he engaged in protected activity.

152.   Because of the defendant's violation of Title VII, the plaintiff has been damaged and continues to be damaged, suffering loss of pay, benefits, other monetary and non-monetary losses, and mental anguish.

## XIV.   COUNT XI DEFAMATION

## against Evonik and Charles Graham

153.   The plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

154. Charles Graham, an Evonik employee made a false and defamatory statement concerning the plaintiff being banned from the company site;

155. The communication between Graham and Wood Engineering was an unprivileged communication of that statement to a third party;

156. The false and disparaging assertions about Plaintiff amounted to at least negligence on the part of the defendant; and

157. The statement damaged plaintiff in his trade.

## XV.    PRAYER FOR RELIEF

**WHEREFORE, the plaintiff respectfully prays for the following relief:**

A. Grant the plaintiff a permanent injunction enjoining the defendants, their agents, successors, employees, attorneys, and those acting with the defendant and at the defendant's request from continuing to violate the terms of Title VII of the Civil Rights Act of 1964;

B. Grant the plaintiff a permanent injunction enjoining the defendants, their agents, successors, employees, attorneys and those acting with the defendant and at the defendant's request from continuing to violate the terms of Section 1981;

C. Enter an Order requiring the defendant to make the plaintiff whole by awarding reinstatement to the position he would have had, had he not been terminated;

D.    Award the plaintiff back pay, with employment benefits, front pay, liquidated damages; compensatory damages, special damages; punitive damages, and or nominal damages;

E.    Attorneys' fees and costs;

F.    The plaintiff requests that the Court award the plaintiff equitable relief as provided by law; and,

G.    Any different or additional relief as determined by the Court to which the plaintiff is entitled.

DATED: January 2, 2025

## JURY TRIAL DEMANDED

*/s/Kira Fonteneau*
_____
Kira Fonteneau ASB 7338-k58f


Counsel for Charles D Huggins

**OF COUNSEL:**


The Workers Firm LLC
2 North 20th St, Suite 900
Birmingham, AL 35203
kira@theworkersfirm.com


**PLEASE SERVE THE DEFENDANT AS FOLLOWS:**

**Brown & Root Industrial Services LLC**

**CT Corporation System**
**2 North Jackson Street**
**Montgomery, AL 36104**